UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| D.T. by and through NEXT FRIEND GARRETT TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> M.S. by and through DEFENDANT AD LITEM, THOMAS SNIDER, <br><br> and <br><br> POLARIS INC., <br><br> Defendants. | Case No. 22-cv-04132-NKL |

## ORDER

Before the Court is Plaintiff D.T.'s Motion to Remand this case to the Circuit Court for Boone County. Doc. 19. In April 2022, Plaintiff, a Missouri resident, filed a lawsuit against M.S., another Missouri resident, for alleged negligence related to an accident involving a Polaris Utility Vehicle (the "UTV") driven by Defendant M.S. Plaintiff originally sued in the Circuit Court for Boone County, naming only M.S. as a defendant. D.T. and M.S. agreed to resolve certain issues, and on July 28, 2022, Plaintiff and M.S. asked the Circuit Court to approve their agreement (the "Settlement").[1] The Circuit Court ultimately approved the Settlement, Doc. 19, characterizing it as partial. Immediately thereafter, on August 2, Plaintiff removed the exhibits supporting the Settlement from the state court docket and filed an amended complaint, naming Polaris Inc., the diverse manufacturer of the UTV, for the first time. Plaintiff did not initially provide Polaris with

---

[1] Both D.T. and M.S. are minor children, and therefore any settlement must be approved by a court.

the terms of the Settlement or a copy of the exhibits it had filed in state court in support of the Settlement, despite Polaris's requests, nor did it file any such documents in support of the Motion to Remand. The Court ordered production of the Settlement to Polaris, which now argues that, according to the Settlement, Plaintiff has fully settled with M.S., the non-diverse Defendant. Therefore, according to Polaris, this Court can ignore M.S.'s citizenship and exercise diversity jurisdiction.

The Settlement Agreement establishes that Defendant M.S. and his parents are covered by two policies issued by Liberty Mutual Insurance Company totaling $1,300,000 (the "Liberty Policies"). In response to the UTV accident, Liberty agreed to cover up to the full policy limit. $1,500 of that sum was to be used to compensate others, leaving $1,298,500 in insurance proceeds. It is undisputed that, in return for agreeing to limit recovery to the insurance policies, Defendant M.S. agreed to pay $1,288,500 to Plaintiff—$10,000 less than the available coverage.

The Parties agree that this case turns on whether Plaintiff automatically receives the remaining $10,000 regardless of how litigation unfolds. Polaris contends that no matter what, M.S. must pay Plaintiff the remaining $10,000, meaning M.S. has no stake in this litigation. Plaintiff and M.S. on the other hand argue that while any future recovery against them is limited to the $10,000, there is no guarantee that Plaintiff will in fact recover that money.

## I. STANDARD

A party may remove an action to federal court if there is complete diversity of the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a), 1441(a). "In the case of a removed action, diversity [of citizenship] must exist both when the state petition is filed and when the petition for removal is filed." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (quotation omitted). "If at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).[2] The removing party bears the burden of establishing—and defending—federal jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). "[A] district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted). Specifically, in "determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor." *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995); *Filla*, 336 F.3d at 811 (holding that when ruling on a motion to remand "the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor.").

There are several exceptions to the complete diversity rule. First, a fraudulently joined defendant will not destroy a federal court's diversity jurisdiction. When deciding if a plaintiff has fraudulently joined a nondiverse defendant, the court determines if the plaintiff's claim against the defendant has a reasonable basis in law and fact. *In re Prempro*, 591 F.3d at 620. If it does not, the court ignores the citizenship of the fraudulently joined defendant for purposes of determining diversity. *See id*. On the other hand, if there is a valid claim against a defendant, whether "his joinder was motivated by a desire to defeat federal jurisdiction is not material." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977).

Furthermore, in conducting the diversity analysis, the court disregards the citizenship of any nominal parties and determines jurisdiction from the citizenship of the real parties in interest.

---

[2] The Court may consider facts beyond the face of a plaintiff's complaint in determining whether a non-diverse defendant was fraudulently joined. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011).

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980); *Iowa Pub. Serv. Co.*, 556 F.2d at 404; *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 544 (8th Cir. 2015). Nominal parties are generally those without a real interest in the result of the suit or an ownership interest in the funds at issue. *Caranchini v. Kozeny & McCubbin*, LLC, 2011 WL 5921364, at *3 (W.D. Mo. Nov. 28, 2011).[3] Said differently, a party is nominal, rather than a real party in interest, where it is "of no moment [to the party] whether the one or the other side in [a] controversy succeed[s]." *Bacon v. Rives*, 106 U.S. 99, 104 (1882). Court must analyze a party's interest at the time a lawsuit is filed in federal court. *Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998).

## II. DISCUSSION

### A. Whether the Settlement Agreement Demonstrates that there Is No Live Controversy Between Plaintiff and Defendant M.S.

The Parties appear to agree that, whether it is because of the fraudulent joinder or nominal party doctrines, this case hinges on the interpretation of the Settlement, and specifically whether Plaintiff will automatically receive the $10,000 remaining under the Liberty Policies, regardless of what happens at trial. For that reason, the Court begins its analysis with the Settlement's terms.

Under Missouri law, normal rules of contract interpretation guide the Court's analysis of a settlement agreement. *Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984). The Court must "first attempt to ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Belton Chopper 58, LLC v. North Cass Development, LLC*, 496 S.W.3d 529, 532 (Mo. Ct. App. 2016). The Court must consider the whole agreement and must interpret the Settlement to give effect to all its terms.

---

[3] *See also Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) (affirming subject matter jurisdiction when lawsuit proceeded with nondiverse nominal plaintiff).

*Foley Co. v. Walnut Assoc.*, 597 S.W.2d 685, 689 (Mo. Ct. App. 1980); *Press Mach. Corp.*, 727 F.2d at 784.

Here, looking to the context of the entire agreement and interpreting the Settlement to give all terms meaning, the Court concludes that Plaintiff is not guaranteed by the terms of the Settlement to recover the remaining $10,000.

To begin, Paragraph 6 establishes that any judgment obtained against M.S., or any subsequent settlement negotiated with him, will be limited to the $10,000 remaining under the Liberty Policies. Paragraph 2 and Paragraph 16 establish several situations in which that remaining $10,000 would be paid to Plaintiff.

Paragraph 2 reads:

> The parties have agreed to consideration for this Agreement in the amount of $1,288,500, with the remaining policy limits of $10,000 to be paid to [Plaintiff] prior to entry of a formal judgment against other persons or entities in a fashion that will extinguish non-contractual indemnity and contribution claims of others against [Defendant M.S.], and they will provide [Defendant M.S.] with a release of all claims pursuant to 537.060 RSMo in return for payment to them of the remaining proceeds from the aforementioned Liberty policies.

Doc. 37-1, at ¶ 2. Polaris argues that the "to be paid" language must mean that the remaining $10,000 must be paid to Plaintiff as consideration for the Settlement, regardless of what happens as this case progresses. Said differently, according to Polaris, the second phrase of Paragraph 2 establishes the timeline by which that mandatory payment must be made. The Court disagrees. To make the entire Settlement, including Paragraph 16, make sense, Paragraph 2 must be interpreted to establish two separate promises. First, Paragraph 2 required M.S. to pay Plaintiff $1,288,500 in exchange for Plaintiff's agreement to limit any future recovery to the $10,000 remaining under the Liberty policy. Second, if Plaintiff successfully recovers against a third party, for example, Polaris, M.S. has agreed to pay the additional $10,000 in exchange for Plaintiff's

agreement to release, prior to entry of a formal judgment, all tort claims against M.S. "in a fashion that will extinguish non-contractual indemnity and contribution claims of others against [Defendant M.S]." To have any meaning at all, this provision can only apply if there is a finding of responsibility against both M.S. and a third party like Polaris. Otherwise, there would be no risk of a noncontractual indemnity, or a contribution claim against Defendant M.S. If M.S. wins at trial, M.S. could not be considered a joint tortfeasor. Similarly, if the third-party wins, there is no one who can seek noncontractual indemnity or contribution against M.S. For these reasons, the Court concludes that the Paragraph is not ambiguous and does not require M.S. to pay the remaining $10,000 to Plaintiff even if M.S. successfully defeats liability.

Paragraph 16 similarly does not require M.S. to automatically pay the remaining $10,000 to Plaintiff. Pursuant to Paragraph 16:

> In the event any judgment is entered against [Defendant M.S.], [Plaintiff] agree[s] to file a satisfaction of judgment upon the following:
>
> a. Final approval by the Court as required by Missouri law; and
>
> b. Payment of the remaining portion of the applicable policy limits by Liberty in exchange for a Section 537.060 RSMo release.

This paragraph only applies if a judgment is entered against Defendant M.S. If that happens, Defendant M.S. has agreed to pay Plaintiff the full $10,000 remaining under the Liberty Policies, regardless of the amount a jury awards. But if a judgment is not entered against Defendant M.S., then he owes nothing more to Plaintiff. In other words, he still has a stake in the outcome of this litigation.[4]

Taken together, the Settlement contemplates several outcomes: (1) Plaintiff recovers against M.S., but not Polaris, in which case M.S. must pay the full $10,000 pursuant to Paragraph

---

[4] In addition to these provisions, the Settlement also explicitly requires that a jury determine the full value of Plaintiff's damages caused by M.S. Doc. 37-1, at ¶ 7.

16; (2) Plaintiff recovers against Polaris, but not M.S., in which case M.S. is not obligated to pay anything more because Paragraph 16 does not apply and Paragraph 2 does not apply because M.S. would not be at risk of "non-contractual indemnity and contribution claims of others;" (3) Plaintiff recovers against both M.S. and Polaris, in which case M.S. must pay the full $10,000 to Plaintiff in a fashion to avoid "non-contractual indemnity and contribution claims of others against" M.S.; (4) Plaintiff recovers against neither defendant, in which case M.S. is not obligated by the Settlement to pay anything more to Plaintiff. Because the Settlement contemplates several scenarios in which Defendant M.S. would not be obligated to pay *anything*, let alone the full $10,000, M.S. has a financial stake in the litigation. *See Thrapp v. Armstrong World Industries, Inc.*, 767 F. Supp. 822, 822–824 (N.D. Tex. 1991) (finding settlement by which defendant paid $490,000 up front with a possible $10,000 increase depending on the jury verdict was "partial"); *Higgins v. Pittsburgh–Des Moines Co.*, 635 F. Supp. 1182 (S.D. Tex. 1986) (finding settlement agreement was partial because plaintiff had to obtain jury verdict against nondiverse defendant in order to receive the additional payment contained within settlement agreement).[5]

M.S.'s stake in this litigation is not *de minimis*. Polaris has cited no authority to suggest that M.S. is a nominal party simply because future recovery has been limited to the amount remaining under an insurance policy. *Cf. Walsh v. Arbuckle*, No. 4:17-CV-00664-NKL, 2017 WL 4512586, at *3 (W.D. Mo. Oct. 10, 2017); *see also Balling v. Bendickson*, No. 4:12-CV-860-CAS, 2012 WL 3715810, at *4 (E.D. Mo. 2012) ("[Defendant] has a stake in [the] litigation because plaintiff seeks a judgment against her—regardless of who pays it."). Nor is the $10,000 itself a *de minimis* value that demonstrates there is no true controversy. While $10,000 is but a small fraction

---

[5] The Court's interpretation is also consistent with the state court's statement that the Settlement was "partial."

of the whole policy, Polaris cites no case to suggest the Court should consider such things when determining whether a value is *de minimis*. Other courts have found $10,000 in dispute to be enough to not deem a defendant nominal. *Thrapp*, 767 F. Supp. at 823.[6]

Furthermore, even assuming Plaintiff structured the settlement as he did to defeat federal jurisdiction, the Court's analysis does not change. So long as there is a viable claim against the nondiverse party, it does not matter that the party was joined just to stave off removal. *Iowa Pub. Serv. Co.*, 556 F.2d at 404; *see also Spill Textile Corp. v. Spilltech Env't, Inc.*, 223 F. Supp. 2d 790, 794 (E.D. Tex. 2002) (denying remand even though there was evidence that plaintiffs engaged in "blatant strategic maneuvering" to defeat diversity, holding that such tactics are irrelevant so long as plaintiff's claim against nondiverse party has a reasonable basis in state law). Nor is whether Plaintiff actually intends to pursue its claim against M.S. relevant. *See Holzer v. Athene Annuity & Life Assurance Co.*, No. 17-CV-0755-NKL, 2017 WL 4390278, at *2 (W.D. Mo. Oct. 3, 2017) (explaining that whether a party intends to prosecute a case against a defendant is irrelevant to fraudulent joinder analysis; all that matters is that a claim has a colorable basis in law and fact). To be sure, the evidence suggests that Plaintiff's strategy has long been to keep this dispute out of federal court. There is also evidence that suggests Plaintiff and Defendant M.S. worked together to advance this strategy. But that is not enough. *Iowa Pub. Serv. Co.*, 556 F.2d

---

[6] Polaris cites two cases, *Ratcliff v. Fibreboard Corp*. 819 F. Supp. 584 (W.D. Tex. 1992) and *Rowe v. Johns-Manville*, No. 86-6044, 1987 WL 12266 (E.D. Pa. June 9, 1987), to argue that the outstanding $10,000 is *de minimis*. *Ratcliff* turned on evidence unique to the settlement involved and has little bearing on the issues before this Court. To the extent it is relevant at all, the Court is not persuaded by it. In *Rowe*, the controversy between the nondiverse defendant and plaintiff centered on $1.00. That court concluded the $1.00 was *de minimis*, and therefore the litigation between the nondiverse defendant and plaintiff had been fully and finally resolved by the lump-sum payment required by the settlement. Even considering *Rowe* was decided in 1987, $1.00 is nowhere near $10,000. The Court concludes that a dispute over $10,000 is more than *de minimis*. *Cf. Bizrocket.com, Inc. v. Interland, Inc.*, 04-CV-60706, 2004 WL 7340349, at *2 (S.D. Fla. July 22, 2004) (finding $100 remaining in dispute after settlement to be *de minimis*).

at 406 ("If under our dual court system a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of properly joining a nondiverse defendant or a nondiverse co-plaintiff, he is free to do so."); *Housley by & through Hubbard v. Dial Corp.*, No. 4:17-CV-00577-DGK, 2017 WL 3269386, at *2 (W.D. Mo. Aug. 1, 2017) (finding no fraudulent joinder despite communication between plaintiff and nondiverse defendant prior to the case and evidence that nondiverse defendant was not actively participating in the litigation and concluding that all evidence of collusion or plaintiff's intent was irrelevant; the only relevant inquiry for fraudulent joinder is whether state law "might" impose liability on the nondiverse defendant).[7]

Because in the Eighth Circuit the fraudulent joinder analysis turns on the viability of the claim against the nondiverse defendant, not on whether plaintiff strategized to defeat federal jurisdiction, and because Plaintiff is not guaranteed to receive the $10,000 remaining under the Liberty Policies regardless of the outcome of trial, Plaintiff's Motion to Remand must be granted. Defendant M.S. was not fraudulently joined, nor is he a nominal party, and therefore his Missouri citizenship destroys this Court's diversity jurisdiction.[8]

---

[7] Polaris argues that "courts in this Circuit have routinely held that fraudulent joinder exists where, as here, a 'plaintiff has no real intention of prosecuting the action against the resident defendant.'" Doc. 22, at 11 (quoting *Reeb v. Wal-Mart Stores, Inc.*, 902 F.Supp. 185, 187 (E.D. Mo. 1995)). Polaris is correct that several decisions in this Circuit suggest relying on intent is appropriate. However, all recent Eighth Circuit cases have relied upon the fraudulent-joinder standard announced by the Eighth Circuit in *Filla v. Norfolk Southern Railway Co.*, 336 F.3d 806, 810 (8th Cir. 2003). *See, e.g., Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015); *Knudson*, 634 F.3d at 980; *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 446 (8th Cir. 2010); *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007); *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006). As a result, almost every recent case has relied on the viability of the claim against the nondiverse defendant, not whether the plaintiff intends to prosecute that claim. *E.g., Glazer v. Unum Life Ins. Co. of Am.*, No. 18-CV-390, 2018 WL 3421325, at *3 & n.2 (E.D. Mo. July 13, 2018).

[8] Plaintiff also argues that Polaris' Notice of Removal is defective, given Defendant M.S. did not consent to removal. Usually, all defendants must consent to removal. But a defendant who was

### B. Whether Additional Jurisdictional Discovery Is Appropriate

Polaris requests that "if the Court has any lingering doubt that M.S is fraudulently joined in this case for the purpose of defeating diversity jurisdiction," Polaris should be permitted to conduct jurisdictional discovery. Doc. 37, at 7. As discussed, in the Eighth Circuit, fraudulent joinder does not turn on a party's intent. Therefore, even if Polaris procured the evidence it seeks, this Court's analysis would not change. The Court need not permit jurisdictional discovery when doing so would be futile. *F.D.I.C. v. Dosland*, 50 F. Supp. 3d 1070, 1078 (N.D. Iowa 2014). ("To put this requirement in terms of a positive burden, the party seeking jurisdictional discovery must explain how the evidence it seeks will raise a genuine issue of material fact relevant to subject matter jurisdiction."). Therefore, the Court will not permit it here. *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (affirming district court's denial of jurisdictional discovery when material sought had no bearing on the relevant jurisdictional issue).

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: 4/26/2023  
Jefferson City, Missouri

---

fraudulently joined or who is a nominal party need not consent to removal. *See Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017); *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1161 (8th Cir. 1981). For that reason, the propriety of Polaris' Notice of Removal is tied to whether Defendant M.S. is a proper defendant in this case. Because the Court holds that M.S. was neither fraudulently joined nor a nominal party, his consent for removal was required. M.S.'s lack of consent is another basis for remand.